DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS

VIRGIN ISLANDS WATER & POWER AUTHORITY,

                Plaintiff,

                -v.-

APR ENERGY PLC and POWER RENTAL OP CO, LLC

                Defendants.

3:21-CV-00024

OPINION

## MEMORANDUM OPINION

CHERYL ANN KRAUSE, Circuit Judge, sitting by designation.

THIS MATTER comes before the Court on Defendants' Motion to Change Venue or, Alternatively, Motion to Dismiss. (Dkt. No. 9). For the reasons set forth below, the Court will grant Defendants' Motion to Change Venue, pursuant to 28 U.S.C. § 1404(a), and will transfer this case to the District Court for the Southern District of New York.

### I. BACKGROUND

On February 15, 2012, General Electric International (GE) entered into a Rental Agreement with plaintiff Virgin Islands Water and Power Authority (WAPA), a public corporation and autonomous instrumentality of the Government of the Virgin Islands. Complaint ¶¶ 2, 17 (Dkt. No. 1-1); Rental Agreement (Dkt No. 1-1, Exhibit A). Under the Rental Agreement, GE agreed to rent a mobile power plant and water treatment

system to WAPA and to provide related services.  Complaint ¶¶ 2-6 (Dkt. No. 1-1); Rental Agreement at 2-6, 34 (Dkt. No. 1-1, Exhibit A).  GE then transferred its power rental business to APR Energy PLC (APR)[1], an English and Welsch private limited company with its principal place of business in Jacksonville, Florida, on or around October 2013.  Complaint ¶¶ 3, 18 (Dkt. No. 1-1).  As part of this transfer, APR acquired the Rental Agreement with WAPA by virtue of an assignment.  *Id.* ¶ 3.

To satisfy its duties under the newly assigned Rental Agreement, APR and its subsidiary Power Rental Op Co, LLC (Op Co and collectively with APR the "Defendants")—a Florida limited liability company whose sole member is a citizen of England, Wales, and the Marshal Islands—agreed to lease to WAPA a General Electric TM2500+ turbine (Unit 25) along with related equipment, and to provide it with all services needed for installation, testing, operation, and maintenance.  *Id.* ¶¶ 4, 19-20; Notice of Removal ¶ 24 (Dkt. No. 1).  Those obligations changed over time, however, as the parties modified the Rental Agreement through a series of thirteen amendments known as Change Orders.  Complaint ¶ 8; *see* Exhibit B to Complaint (Dkt Nos. 1-1, 1-2). Most relevant to this dispute are Change Orders Three, Four, and Thirteen.

Under the Third Change Order, Defendants agreed to rent WAPA an additional TM2500+ turbine (Unit 26) and to supply it with a vaporization skid capable of converting liquid petroleum gas (LPG) provided by WAPA into a form that was required to operate Unit 26.  Complaint ¶¶ 9-10 (Dkt. No. 1-1); Third Change Order at 1 (Dkt No.

---

[1] APR Energy, PLC is now known as APR Energy Limited.  *See* Notice of Removal at ¶ 2 (Docket No. 1)

1-1, Exhibit B).  The parties' Fourth Change Order was nearly the same: by its terms Defendants would lease WAPA an additional TM2500+ turbine (Unit 27), but WAPA would be required to use the vaporization skid it received from the Third Change Order to run Unit 27.[2]  Complaint at ¶¶ 11-12; Fourth Change Order at 1-2 (Dkt No. 1-1, Exhibit B).

Unlike the Third and Fourth Change Orders, the Thirteenth Change Order did not concern WAPA's rental of additional turbines.  Instead, it purported to resolve the parties' disputes with each other's performance under the Rental Agreement.  Thirteenth Change Order at 1 (Dkt No. 1-2, Exhibit B).  Specifically, by May 1, 2019, WAPA had accrued a $14,291,986 arrearage in payments due under the Rental Agreement, and Defendants had failed to convert Units 26 and 27 to run on LPG rather than diesel.  *Id*. at 2.  Thus, in the Thirteenth Change Order WAPA agreed to release Defendants from "any and all claim(s) by WAPA in connection with WAPA's use of diesel fuel instead of [LPG]" in exchange for Defendants releasing "WAPA with respect to all amounts owed prior to the effective date of this Thirteenth Change Order." *Id*. at 2-3.

---

[2] WAPA alleges it was critical for Units 26 and 27 to run on LPG because the United States Virgin Islands Public Service Commission mandated all units run on LPG by January 1, 2019, and because WAPA could charge lower rates if it generated power through LPG rather than diesel.  Complaint ¶¶ 14-16 (Dkt No. 1-1).  WAPA also alleges that throughout negotiations of the Change Orders, Defendants repeatedly assured WAPA that Units 26 and 27 could be successfully transitioned to burn LPG.  *Id*. ¶ 13.  Despite Defendants' purported pledges, however, they allegedly never converted Units 26 and 27 to burn LPG and by March 31, 2020—the date of the Units' demobilization—both Units continued to burn diesel fuel.  *Id*. ¶ 26. It is Defendants' failure to convert Units 26 and 27, along with the Units' unreliable power-generating services, that form the basis of WAPA's breach of contract claim against Defendants. *Id*. ¶¶ 26-32.

Critically, however, the Thirteenth Change Order provided that "[a]ll other terms and conditions set forth in the [Rental Agreement] (as amended by previous properly executed amendment(s) or Change Order(s)), except as expressly modified herein, shall remain in full force and effect and govern the relationship of the Parties." *Id*. at 3-4. As such, the Thirteenth Change Order kept in place the Rental Agreement's forum-selection clause, which provides that "[a]ny legal action or proceeding with respect to [the Rental Agreement] shall be brought in the United States District Court for the Southern District of New York or, if such court lacks jurisdiction, in the Supreme Court of the State of New York in New York County." Rental Agreement at 22 (Dkt. No. 1-1, Exhibit A). Likewise, the Thirteenth Change Order kept the Rental Agreement's choice of law provision, by which "all matters relating to the interpretation and effect of [the Rental Agreement] and all further documents executed pursuant to it, shall be construed and interpreted in accordance with the laws of the State of New York." *Id*. at 23.

Despite the parties' mutual releases in the Thirteenth Change Order, WAPA filed the instant action in the Superior Court of the United States Virgin Islands for the Division of St. Thomas and St. John. *See generally* Complaint (Dkt. No. 1-1). Soon after, Defendants removed this action to the District Court of the Virgin Islands based on diversity of citizenship under 28 U.S.C. § 1441. Notice of Removal at 1-5 (Dkt. No. 1). Defendants then filed the instant Motion to Change Venue or, Alternatively, Motion to Dismiss on March 18, 2021. (Dkt. No. 9). WAPA responded, *see* Opposition to Motion (Dkt. No. 28), and with Defendants having replied, s*ee* Reply (Dkt. No. 33), Defendants' motion is now ripe for decision.

4

## II.  DISCUSSION

### A.  Jurisdiction

Because WAPA is a citizen of the Virgin Islands, APR a citizen of England and Wales, and Op Co a citizen of England, Wales, and the Marshall Islands, *see* Notice of Removal at 4-5 (Dkt. No. 1), there is complete diversity between the parties. And, because WAPA's complaint seeks damages in excess of $19 million, *see* Complaint ¶ 32 (Dkt. No. 1-1), this Court has subject matter jurisdiction.  *See* 28 US.C. §§ 1332, 1441. Defendants do not raise and have therefore waived any challenge to this Court's personal jurisdiction.  Fed. R. Civ. P. 12(h)(1)(A).

### B.  Venue

The gravamen of Defendants' motion is that by filing suit in the Virgin Islands WAPA violated the Rental Agreement's forum-selection clause, which requires this case either be dismissed for improper venue under Fed. R. Civ. P. 12(b)(3)[3] or transferred to the District Court for the Southern District of New York under 28 U.S.C §§ 1406(a) or 1404(a). *See* Brief in Support of Motion to Change Venue at 5-15 (Dkt. No. 10).  This Court will address each of the Defendants' venue arguments, beginning with a discussion

---

[3] Defendants, in the alternative, also seek dismissal under Fed. R. Civ. P. 12(b)(6) but because this Court is granting Defendants' Motion to Change Venue, Defendants' Motion to Dismiss is properly left to the transferee court.  *See Farkas v. Rich Coast Corp.*, No. 2:13-CV-00926-LPL, 2014 WL 550594, at *1 (W.D. Pa. Feb. 11, 2014); *Execu-Ride Corp. v. Trucker's Bank Plan*, No. CV 16-7434-BRM-DEA, 2017 WL 1927924, at *6 (D.N.J. May 10, 2017).

5

of the applicability of Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), and then moving to an analysis of transfer under 28 U.S.C. § 1404(a).

### i. The Parties' Forum-Selection Clause Does Not Render Venue in This District Wrong or Improper.

As an initial matter, Defendants are incorrect that this case should be dismissed for improper venue, or that a transfer under 28 U.S.C. § 1406(a) would be appropriate. Both § 1406(a) and Rule 12(b)(3) are predicated upon venue being laid in the "wrong" division, *see* 28 U.S.C. § 1406(a), or venue being "improper," Fed R. Civ. P. 12(b)(3). But "a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3)." *Atlantic Marine Const. Co., Inc. v. U.S. Dis. Court for Western Dist. Of Texas*, 571 U.S. 49, 59 (2013). Rather, whether venue is proper is determined solely by the applicable federal venue statute. *Id*. at 58 ("If the federal venue statutes establish that suit may be brought in a particular district, a contractual bar cannot render venue in that district 'wrong.'").

Where, as here, a case is properly removed to a federal district court, venue is determined by 28 U.S.C. § 1441. *See Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665-66 (1953). Section 1441, in turn, provides that venue for removed actions is proper "in the district court for the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Here, WAPA's complaint was originally filed in the Superior Court of the United States Virgin Islands for the Division of St. Thomas and St. John. Notice of Removal at 1 (Dkt. No. 1). Thus, venue is proper within this district and dismissal under Fed. R. Civ. P. 12(b)(3) and transfer under 28

U.S.C. § 1406(a) are inappropriate.  *See, e.g.*, *Hollis v. Florida State University*, 259 F.3d 1295, 1299-1300 (11th Cir. 2001); *Exec. Wings, Inc. v. Dolby*, 131 F. Supp. 3d 404, 413-14 (W.D. Pa. 2015).

### ii.    Transfer Under 28 U.S.C. § 1404(a) Is Appropriate

Even though the forum-selection clause "does not render venue in [this] court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 59.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action or any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In determining whether to grant a motion to transfer under § 1404(a), courts must consider the three factors "enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors, including the plaintiff's choice of forum and the local interest in deciding local controversies close to home." *In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).

But where, as here, the parties have signed a contract containing a valid and enforceable forum-selection clause, this Court's venue calculus changes in three ways. *See Atl. Marine Const. Co., Inc.*, 571 U.S. at 62-64.  First, this Court gives no weight to the plaintiff's choice of forum; "[r]ather, as the party defying the forum-selection clause, the plaintiff bears the burden" of establishing that this case presents "extraordinary

7

circumstances unrelated to the convenience of the parties," such that "transfer to the forum for which the parties bargained is unwarranted." *Id*. at 62-63.  Second, this Court will "not consider arguments about the parties' private interests" but only the factors bearing on public interests, the practical result of which "is that the forum-selection clause should control except in unusual cases," as the public interest factors "will rarely defeat a transfer motion." *Id*.  Third, and finally, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id*.

Here, the parties do not dispute the existence of a valid and enforceable forum-selection clause, nor do they dispute that this clause, if enforced, requires that venue be laid in the United States District Court for the Southern District of New York.  *See* Brief in Support of Motion to Change Venue at 2 (Dkt. No. 10); Opposition to Motion at 1-2 (Dkt. No. 28).  In deciding Defendants' Motion to Change Venue, then, this Court will only consider the parties' arguments about the public-interest venue factors.  Under Third Circuit precedent, the public interest factors this Court must balance include:

> [1] the enforceability of the judgment; [2] the relative administrative difficulty in the two fora resulting from court congestion; [3] the local interest in deciding local controversies at home; [4] the public policies of the fora; and [5] the familiarity of the trial judge with the applicable state law in diversity cases.

*In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017) (quotations and citation omitted).  In balancing these factors, this Court is cognizant that WAPA bears the

burden to show that venue should be kept here notwithstanding the Rental Agreement's forum-selection clause.

Nonetheless, in its briefing, WAPA devotes surprisingly little real estate arguing that the public interest factors favor keeping venue here. Instead, it argues primarily that Defendants waived enforcement of the forum-selection clause by commencing a separate action in Florida seeking enforcement of a promissory note. Opposition to Motion at 5-7 (Dkt. No. 28). That argument is premised on *Kettler International, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 850-51 (E.D. Va. 2014), where the District Court concluded that Starbucks waived its forum-selection clause by filing a third-party complaint that invoked the agreement containing the forum-selection clause in a venue not contemplated by the forum-selection clause. But it does not move the ball forward for WAPA.

*Kettler*, of course, is not binding precedent, nor has its waiver theory been endorsed by the Third Circuit. More fundamentally, however, it is inapplicable here because Defendants' suit in Florida was not based on an alleged breach of the Rental Agreement. Rather, it was based on a breach of an alleged breach of a promissory note that was executed along with the Thirteenth Change Order. Reply at 7-10. Thus, while the facts of *Kettler* are superficially similar, Defendants' Florida action did not "invoke[] the Agreement containing the forum-selection clause" as in *Kettler*, 55 F. Supp. 3d at 850, but instead sought to enforce rights under a separate, albeit factually related, contract. That contract, moreover, had its own distinct forum-selection clause permitting Defendants to proceed in Florida. Exhibit A to Florida Complaint at 5, *Power Rental Op Co, LLC v. Virgin Islands Water and Power Authority*, No. 3:20-cv-01015-TJC-MCR

9

(M.D. Fla. 2020) (agreeing "that any legal action, suit, or proceeding arising out of or relating to this Note *may* be brought in the courts of the United States Virgin Islands") (emphasis added). This makes it all the more implausible that the Florida action implicated, let alone waived, the forum-selection clause in the Rental Agreement. *See, e.g.*, *Tulepan v. Roberts*, No. 14-cv-8716, 2014 WL 6808313, at *2 (S.D.N.Y. Dec. 3, 2014); *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 427 (5th Cir. 2016).

Though WAPA's briefing centers on its waiver theory, it does include a short discussion of the venue transfer factors. In that discussion, however, WAPA incorrectly devotes most of its analysis to the private-interest factors, operating from the assumption that these factors are relevant because Defendants waived the forum-selection clause. Opposition to Motion at 8-11 (Dkt No. 28). In particular, WAPA stresses that the Virgin Islands is the more convenient forum for the witnesses, since WAPA is located there. *Id.* at 9. But, as detailed above, WAPA's waiver argument is inapplicable, and this Court may consider only the public-interest factors, which do not include the convenience of the parties and witnesses.[4]

And even when WAPA touches on the public-interest factors, it misses the mark. It begins its analysis by asserting, incorrectly, that the burden of persuasion on the motion

---

[4] To the extent WAPA may be arguing that convenience of the witnesses is a public interest factor because it is one aspect of the "practical problems that make trial of a case easy, expeditious, and inexpensive," this argument also fails. The Third Circuit clarified in *In re: Howmedica Osteonics Corp.*, 867 F.3d at 402, n. 7 that the "practical problems that make trial of a case easy, expeditious, and inexpensive" factor represents a private interest.

to transfer rests with Defendants, again based on the mistaken premise that they waived the forum-selection clause.  Opposition to Motion to Transfer at 10 (Dkt No. 28).  It then touts the Virgin Islands' strong local interest in the resolution of this case, without discussing any of the other public-interest factors.  But because the forum-selection clause was not waived, the burden of persuasion rests with WAPA, and not Defendants.  *Atl. Marine Const. Co*, 571 U.S. at 63.  And, when this Court balances all the public-interest factors, WAPA has not carried that burden.

The Court begins with the first factor—"the enforceability of the judgment." *In Re: Howmedica Osteonics Corp*, 867 F.3d at 402.  Here, WAPA seeks only damages in its complaint, and does not seek injunctive or other relief.  Complaint at 7 (Dkt. No. 1-1).  Under 28 U.S.C. § 1963, a judgment for damages entered in any district court may be registered and enforced in any other district court.  Thus, whether a judgment is rendered here or in the Southern District of New York, it can be enforced in either forum, making the first factor is neutral.  *See Madrazo v. Welcome Hotel Grp., LLC*, No. CV 18-0427, 2018 WL 1942369, at *5 (E.D. Pa. Apr. 25, 2018)

As for the second factor, neither party has informed the Court whether there are any administrative difficulties in the fora resulting from court congestion.  This Court is not constrained to look only at the parties' briefs, however, and may take judicial notice of adjudicative facts so long as they are not subject to reasonable dispute.  *In re Indian Palms Associates, Ltd.*, 61 F.3d 197, 205 (3d Cir. 1995) (citing Fed. R. Evid. 201(b)).  To compare the administrative difficulties resulting from court congestion, this Court takes judicial notice of the "U.S. District Courts – Federal Court Management Statistics –

11

Comparison Within Circuit," which "comes from a government source, and can therefore be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Ocampo v. Heitech Services, Inc.*, No. 4:19-cv-4176, 2019 WL 539108, at *2 (N.D. Cal. 2019).

These Federal Court Management Statistics suggest that the District Court for the Southern District of New York is more capable to resolve this case expeditiously. The Southern District had 13,298 filings from June 2021-2022, as compared to the Virgin Island's 285 filings. *See* U.S. District Courts – Federal Court Management Statistics – Comparison Within Circuit. But it also has 28 judges, compared to the two judges of the Virgin Islands, so despite the higher number of filings, the median time from filing to disposition of a civil case in the Southern District was 5.7 months, as compared to the Virgin Island's 6.2 months. *Id*. These statistics establish that the second favor weighs, albeit ever-so-slightly, in favor of transfer.

On the other hand, the third factor—the local interest in deciding local controversies at home—weighs against transfer. Defendants contend that this factor favors transfer because "the Rental Agreement was negotiated in New York, and entered into with [GE] in New York." Brief in Support of Motion to Change Venue at 8 (Dkt. No. 10). Even so, GE is no longer a party to the Rental Agreement, and Defendants have not argued or otherwise established that they played any role in negotiating the Rental Agreement in New York. Complaint ¶ 3 (Dkt. No. 1-1). More importantly, however, the Rental Agreement and subsequent Change Orders concern turbines and other equipment located in the Virgin Islands and used by a Virgin Islands entity. Rental Agreement at 2

12

(Dkt. No. 1-1).  *See BB&T Com. Equip. Cap. Corp. v. Neighbors Legacy Holdings, Inc.*, No. CV 17-2615, 2017 WL 10607258, at *1 n. 1 (E.D. Pa. Dec. 11, 2017); *CoActiv Cap. Partners, Inc. v. Feathers*, No. CIV A 08-5506, 2009 WL 1911673, at *6 (E.D. Pa. July 1, 2009).

WAPA's status as a Virgin Islands public utility company, in and of itself, is also an important consideration in weighing local interests.  Indeed, it is difficult to imagine how the Virgin Islands could have a lesser interest than New York in deciding a case concerning a public utility that serves Virgin Islands residents.  *See, e.g.*, *Silvis v. Ambit Energy, L.P.*, 90 F.Supp.3d 393, 399 (E.D. Pa. Mar. 13, 2015) (holding as to venue for a class-action breach-of-contract case against an electric utility company, that the local interest of Pennsylvania in regulating its electricity market was stronger than that of Texas, where the company was located); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, No. 3-08-CV-1779-L, 2009 WL 918459, at *5 (N.D. Tex. Apr. 3, 2009) ("Most importantly, Hawaii has a significant connection to the subject matter of this litigation, which arises out of a failed endeavor to construct a biodiesel fuel production facility . . . for the benefit of Hawaii residents.").  The Virgin Islands thus has the stronger local interest in resolving this dispute.[5]

---

[5] The Court does not credit the suggestion, made by one district court, that a defendant's public-utility status counsels against the local venue because local jurors may be swayed by a financial interest if they believe their rates could be affected by the suit.  *See N. Indiana Pub. Serv. Co. v. Envirotech Corp.*, 566 F. Supp. 362, 365 (N.D. Ind. 1983); *but see In re Wyoming Tight Sands Antitrust Cases,* 723 F. Supp. 561, 563 (D. Kan. 1988) (speculation that utility customers will benefit from any recovery by the utility company does not weigh in favor of transfer).  In all but the most exceptional cases, such concerns can be resolved through voir dire, and jurors are presumed to abide by their

13

With respect to the fourth factor, neither party has made this Court aware of public policies in either forum regarding venue for breach of contract disputes. Instead, Defendants argue that this factor favors New York because freedom of contract is a fundamental public policy of New York, and as such, contracts in New York will be enforced as written. Brief in Support of Motion to Change Venue at 8 (Dkt No. 10). But that misapprehends the purpose of this factor. The public-policy venue factor is not concerned with a state's public policy regarding the law underlying the substantive, rather than procedural, legal issues in a case; rather, this factor requires courts to consider whether a given forum has a public policy concerning whether venue for a given type of claim should lie in that forum. *See M/S Bremen v. Zapata Of-Shore Co.*, 407 U.S. 1, 9-10 (1972).

Hence, when courts have declined to enforce forum-selection clauses on public policy grounds, they have focused on public policies, usually set forth by state statute, that expressly address where that type of claim should be venued. *See, e.g.*, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497-98 (9th Cir. 2000) (affirming District Court's denial of motion to transfer despite existence of forum-selection clause in franchise agreement because state statute expressly stated that forum-selection clauses in franchise agreements are void and that franchise disputes concerning local franchises should be heard within the state); *Lakeside Surfaces, Inc. v. Cambria Company, LLC*, 16 F.4th 209,

---

oaths and the Court's instructions. In any event, Defendants have not raised this argument, so it is waived as well as meritless.

220-22 (6th Cir. 2021) (same). Absent evidence of any such policy relevant to WAPA's claims, this factor appears neutral.

Lastly, because the parties agreed that "the validity, performance, and all matters relating to the interpretation and effect of th[e] [Rental Agreement] and all further documents executed pursuant to it, shall be construed and interpreted in accordance with the laws of the State of New York," Rental Agreement at 23 (Dkt. No. 1-1), the fifth factor clearly weighs in favor of transfer. A District Court in New York will "undoubtedly be more familiar with the substantive law of New York regarding contracts." *Reading Metal Craft Co., Inc. v. Hopf Drive Associates*, 694 F. Supp. 98, 105 (E.D. Pa. July 27, 1988).

To summarize: of the five factors, two are neutral, one weighs against transfer, and two weigh in favor. While WAPA's status as a public utility makes this Court's balance of the factors more difficult—as the local nature of this dispute strongly favors retention—WAPA still has the burden to establish this is an "extraordinary" case where the public-interest factors on the whole favor a forum other than that agreed upon by the parties. Because the public-interest factors tilt, even if slightly, in favor of transfer and WAPA has not met its burden to show otherwise, this Court is constrained by *Atlantic Marine Construction Co.,* to conclude the "'interest of justice' is [best] served by holding [the] parties to their bargain." *Id*. at 66. Transfer pursuant to 28 U.S.C. § 1404(a) is thus appropriate.

## III. CONCLUSION

For these reasons, this Court will GRANT Defendants' Motion to Change Venue This action is hereby transferred to the United States District Court for the Southern District of New York.